| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| LOURDES MARTE and THOMAS SANTOS, | **MEMORANDUM & ORDER** |
| Plaintiffs, | 20-cv-313 (ERK) (VMS) |
| – against – | |
| DOLLAR TREE STORES, INC., FAMILY DOLLAR STORES OF NEW YORK, INC., and FAMILY DOLLAR, | |
| Defendants. | |
| DOLLAR TREE STORES, INC., FAMILY DOLLAR STORES OF NEW YORK, INC., and FAMILY DOLLAR, | |
| Third-Party Plaintiffs, | |
| – against – | |
| 705-711 FRANKLIN REALTY LLC and JAMAICA AUTUMN LLC, | |
| Third-Party Defendants. | |

KORMAN, J.:

Plaintiffs Lourdes Marte and Thomas Santos filed this lawsuit against Defendants Dollar Tree Stores, Inc., Family Dollar Stores of New York, Inc., and Family Dollar (collectively "Family Dollar") to recover damages caused by a fall Marte suffered on July 25, 2018, while inside a Family Dollar Store located at 888

1

Jamaica Avenue in Brooklyn, New York. Marte alleges that she slipped on liquid on the floor and that the ceiling above where she fell exhibited signs of water damage. Family Dollar filed a third-party complaint against Third-Party Defendants 705-711 Franklin Realty LLC ("Franklin Realty") and Jamaica Autumn LLC ("Jamaica Autumn") and alleges it entered into lease agreements with Franklin Realty and Jamaica Autumn that establish that the third-party defendants are responsible, under both tort and contract theories of liability, for any damages owed to the plaintiffs. Family Dollar did not attach a copy of either of the alleged lease agreements to its complaint.

Jamaica Autumn moved to dismiss the claims brought against it, arguing that it owed no duties to Family Dollar or Marte on the date of the fall. In support, Jamaica Autumn principally relied on two documents: a lease agreement for the property at 888 Jamaica Avenue entered into between Jamaica Autumn and Family Dollar on June 4, 2015, and an assignment and assumption of that lease dated June 22, 2016, entered into by Jamaica Autumn and Franklin Realty. Because it was not apparent that the assignment was either incorporated or "integral" to Family Dollar's complaint, I notified the parties that, pursuant to Federal Rule of Civil Procedure 12(d), I would treat Jamaica Autumn's motion to dismiss as a motion for summary judgment, and I directed the parties to submit any additional material pertinent to the motion within thirty days. *See* Docket Entry of Nov. 23, 2021 (quoting *Nicosia v.*

*Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)). The parties complied and submitted additional evidence and briefing.

As relevant to this motion, the evidence establishes the following: On June 4, 2015, Jamaica Autumn and Family Dollar entered into a lease agreement for the property at 888 Jamaica Avenue. ECF No. 56-1 at 1. The lease term was to commence after Jamaica Autumn completed several improvements to the property. *Id.* at 1, 5. Exhibit B to the lease agreement, a document the parties exchanged on January 7, 2015 (five months prior to the lease agreement), set forth the required pre-lease term improvements. *See id* at 3, 33. Exhibit B required Jamaica Autumn to make "[r]epairs to roof . . . as required to place in watertight condition," *id.* at 44, and those repairs had to be made "according to Exhibit B-1," *id.* at 4, Family Dollar's "roof report . . . outlin[ing] the needed repairs or replacement," *id.* at 44; *see id.* at 62–75.

The lease agreement stipulated that Family Dollar's "failure . . . to object to any part of [Jamaica Autumn's] improvements will not be deemed to be an acquiescence in or acceptance of any failure by [Jamaica Autumn] to comply with Exhibit B; provided, however, that [Family Dollar] will provide [Jamaica Autumn] notice of any defect in workmanship, materials or equipment within six months after the rent commencement date." *Id.* at 3. (Family Dollar had an additional three months to provide notice "for defects relating to the heating and air conditioning systems." *Id.*) Absent such notice, Jamaica Autumn had no contractual duty to

3

"remedy any material defect in workmanship, materials or equipment furnished by Landlord pursuant to" its pre-lease obligations. *Id.* at 11. Still, Jamaica Autumn agreed to "maintain and repair and replace when necessary all exterior portions of the building . . . including the roof" for the duration of the lease term. *Id.* The parties did not submit any evidence demonstrating that Jamaica Autumn ever undertook the pre-lease repairs required by Exhibit B or, on the other hand, that Family Dollar ever objected to the state of the roof after the lease term began.

The lease agreement did not limit Jamaica Autumn's ability to transfer its interest in the lease to another party and specifically provided that, if that occurred, Jamaica Autumn would "be entirely relieved of all terms, covenants and obligations thereafter to be performed by [Jamaica Autumn] under th[e] Lease . . . provided the transferee assumes such terms, covenants and obligations either expressly or by operation of law." *Id.* at 28. On June 22, 2016, Jamaica Autumn assigned "all of [its] right, title, and interest in, to, and under" the lease to Franklin Realty. ECF No. 53-1 at 16. Franklin Realty, in turn "assume[d] all of the obligation under the Lease[] which . . . [would] arise and accrue from and after" the date of the assignment. *Id.*

Over two years later, on July 25, 2018, as observed above, Marte allegedly fell in the Family Dollar store on Jamaica Avenue and suffered severe injuries and damages as a result. ECF No. 9-1 at 9–11. At her deposition, Marte testified that she fell because "there was some type of liquid in the floor" which "looked like water," and that the ceiling above where she fell was damaged with "water spots." ECF No.

4

54-2 at 78–81. Anthony Burgos, another customer at the store that day, testified that liquid was dripping from overhead and created a puddle where Marte slipped. ECF No. 54-3 at 7–11.

## DISCUSSION

To obtain summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In "ruling on a motion for summary judgment[,] . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

In support of its motion, Jamaica Autumn argues that all its duties to Family Dollar and its customers ceased when it assigned the lease to Franklin Realty on June 22, 2016. Unable to deny the validity of the assignment and the resultant transfer of legal duties, Family Dollar makes only one argument in response to Jamaica Autumn's motion. The lease assignment, Family Dollar notes, only transferred to Franklin Realty "the obligation[s] under the Lease[] which . . . [would] arise and accrue from and after" the date of the assignment. ECF No. 53-1 at 16. Jamaica Autumn still bore responsibility for any obligations that arose or accrued

5

before that date, which included an obligation to repair and maintain the roof as the parties had originally agreed. Family Dollar claims that Jamaica Autumn failed to fulfill to those obligations, and the roof's state of disrepair before that date, which Jamaica Autumn was required to remedy, ultimately led to the alleged leak that caused Marte's fall.

Passing over whether Family Dollar's factual theory of the causation of Marte's fall should be characterized as "rely[ing] on conclusory allegations or unsubstantiated speculation" insufficient to "survive summary judgment," *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015), Jamaica Autumn's motion is granted. Even if Family Dollar's factual theory were correct, Jamaica Autumn would not be liable for any damages attributable to Marte's fall as a matter of law.

Family Dollar argues that Jamaica Autumn breached two aspects of the lease agreement before it assigned the lease to Franklin Realty: (1) Jamaica Autumn's duty to make certain roof repairs before Family Dollar's lease term commenced, *see* ECF No. 56-1 at 3–4; and (2) Jamaica Autumn's duty to "maintain and repair and replace" the roof "when necessary" during the lease term itself. *Id.* at 11. Neither of these alleged breaches could render Jamaica Autumn liable for damages arising from Marte's fall.

With respect to the required pre-lease repairs, Family Dollar agreed that its "failure . . . to object to any part of [those] improvements" or "provide [Jamaica

6

Autumn] notice of any defect in" that work "within six months after the rent commencement date" would "be deemed to be an acquiescence in or acceptance of any failure by [Jamaica Autumn] to comply with" its pre-lease repair responsibilities. *Id.* at 3; *see also id.* at 11 ("[Jamaica Autumn] will remedy any material defect in workmanship, materials or equipment furnished by [Jamaica Autumn] pursuant to [its pre-lease repair responsibilities] provided [Family Dollar] notifies [Jamaica Autumn] of the defect within six (6) months after the rent commencement date."). Family Dollar, however, has not alleged, let alone submitted any evidence suggesting, that it ever complained or notified Jamaica Autumn of any deficiency relating to the required pre-lease improvements. Without such evidence, the contract prevents Family Dollar from now complaining of Jamaica Autumn's alleged failure to make the required pre-lease roof repairs.

    As for Jamaica Autumn's duty to "maintain and repair and replace" the roof "when necessary" during the lease term, *id.* at 11, Franklin Realty assumed that responsibility as of June 22, 2016. Even if the roof sustained damage after the lease term commenced but before the lease was assigned to Franklin Realty, any repairs required to ameliorate that damage were no less "necessary" after the assignment than before it, *id.*, and it was therefore left to Franklin Realty to undertake such repairs when it assumed all the lease's obligations. Thus, Franklin Realty, not Jamaica Autumn would be liable for any avoidable damage caused by a faulty roof after June 22, 2016. Indeed, under the lease agreement's express terms, once Jamaica

7

Autumn assigned the lease to Franklin Realty, Jamaica Autumn was "entirely relieved of all terms, covenants and obligations thereafter to be performed by [the] [l]andlord under th[e] Lease." *Id.* at 28.

Family Dollar (or Franklin Realty) might have a colorable claim against Jamaica Autumn if it could plausibly claim that Jamaica Autumn left the roof is such state of disrepair when it assigned the lease to Franklin Realty that Franklin Realty could not have feasibly repaired the roof before it allegedly caused Marte's injuries. Family Dollar, however, does not assert that was the case, and regardless, it would not be "justifiable" to draw this inference based on the facts presented here. *Anderson*, 477 U.S. at 255. Those facts, taken in the light most favorable to Family Dollar for the purposes of motion, are that, on July 25, 2018, the ceiling of the Family Dollar store leaked and created a puddle that caused Marte to slip. No reasonable jury could conclude that this leak was an unavoidable byproduct of the state of the roof when Jamaica Autumn assigned the lease to Franklin Realty over two years earlier on June 22, 2016.

Family Dollar argues that it is entitled to further discovery before a ruling on Jamaica Autumn's motion for summary judgment. Further discovery, however, would be a fruitless endeavor. As explained above, the lack of evidence of a Family Dollar notice sent to Jamaica Autumn regarding the required pre-lease repairs forecloses Family Dollar's argument relying on that contractual duty. If such a notice was sent, one would expect Family Dollar to have a record of sending it. And Family

8

Dollar fails to advance any plausible factual theory—such that further discovery would be necessary—that would support imposing liability on Jamaica Autumn for damages related to Marte's fall based on Jamaica Autumn's alleged failure to make necessary repairs to the roof after the lease term commenced.

## **CONCLUSION**

Jamaica Autumn's motion for summary judgment is granted.

**SO ORDERED.**

*Edward R. Korman*
Edward R. Korman
United States District Judge

Brooklyn, New York
March 30, 2022